### Swift & Company v. Frank Miller.

#### Gen. No. 13,660.

1. Master and servant—*how question of whether a child under sixteen years has been employed at extra-hazardous employment determined.* Whether a child under the age of sixteen years has been employed at extra-hazardous employment in violation of statute, is a question of fact to be determined by the jury. *Held*, in this case, that a child under the age of sixteen years was employed at extra-

Swift & Co. v. Miller.

hazardous employment, it appearing that his duty was to run soiled rags through a ringer.

2. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* The doctrine of assumed risk has no application where recovery is sought for injuries sustained by a servant, a child under sixteen years, by virtue of his having been unlawfully employed at extra-hazardous labor.

3. EVIDENCE—*when expert testimony not competent.* Expert testimony is not competent to determine the question as to whether a particular employment is extra-hazardous within the meaning of the statute prohibiting the employment of children under the age of sixteen years at extra-hazardous employment.

4. ORDINARY care—*how question of exercise of, determined, with respect to child fourteen years of age.* What is due care in a boy of the age of about fourteen years must be determined within the limitations of his actual knowledge of the dangers of the position in which he is placed and of the existence of which he has not been informed.

Action in case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed March 9, 1908.

WINSTON, PAYNE & STRAWN, for appellant; JOHN BARTON PAYNE, JOHN D. BLACK and WALTER H. JACOBS, of counsel.

WALTER A. BRENDECKE, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an action to recover damages for a personal injury to appellee, a minor, which happened to him when he was a little more than fourteen years of age, and while in the employ of appellant. A trial before court and jury resulted in a verdict and judgment for $1,700. Sufficient objections were made and exceptions preserved to the rulings of the trial court calling for our review of the errors assigned and arguments urged for a reversal of the judgment.

Counsel for appellant say in their statement of the case, at the commencement of their brief and argument: "This record presents the single question, whether it was unlawful

to employ a boy over fourteen years of age to run soiled rags through a wringer. * * * Whether the employment of appellee at the work in which he was engaged was a violation of section 14, chapter 48, Starr & Curtis Ann. Illinois Statutes, Supp., 1902."

This section runs: "No child under the age of sixteen years shall be employed or permitted or suffered to work by any person, firm or corporation in this State at such extra-hazardous employment whereby its life or limb is in danger or its health is likely to be injured or its morals may be depraved."

This raises for our determination but two questions: First, was appellee employed to work at the wringer which injured him? and, second, if he was so employed, was such employment extra-hazardous, and therefore a violation of the statute *supra?*

These are questions of fact to be solved from the evidence found in the record.

The record develops that Frank Miller, when a little more than fourteen years of age, was employed by appellant in July, 1902, in doing what the slaughter house people call "pulling skivers," which is the putting of sticks or skewers into the breasts of sheep in the process of dressing them for the market; also in carrying clean rags to be used in wiping the inside of the sheep and returning these rags when foul to be cleaned by being dipped into scalding water and run through a wringer. At the time Miller worked at this employment a colored man was in charge of the cleansing process through the wringer. Miller had never worked at a machine before working the wringer at which he was hurt. For ten months prior to his employment by appellant he had worked at the Armour plant cutting soap. At the time of Miller's injury he had worked for appellant about one week and three days. At the end of the week the colored man who worked the wringer left, and Rogers, who hired Miller, put him to work on the wringer cleansing rags in place of the colored man who had left. Rogers instructed Miller how to proceed with this work. The rags were dipped into

hot water and then thrown onto a board in front of the wringer, which consisted of three rollers through which the rags were run, squeezing the water out of them in the process and fitting them for use again in wiping sheep. It seems that while the rags were thrown onto the board in front of the machine, they had to be thrown in such a way that the thrower must not let go of the end retained between his thumb and finger until the rag is caught in the rollers. Unless it was so caught, it would not go through the rollers, and failing so to do, the rag had to be thrown over again. Rogers, a witness for appellant, testifies that in instructing Miller about this work he put 50 or 60 rags through the wringer; that when he found Miller could throw them all right he left him. On the first day Miller worked throwing the rags, Rogers says he caught him in the afternoon trying to shove a rag into the rollers with his hand, the rag not having caught when thrown; that he reproved him for his recklessness and threatened to discharge him if he caught him doing such a thing again, and cautioned him to call on him if there was any trouble. It seems that the ends of these rags become frayed by use. In throwing one of the rags frayed at the end, Miller was drawn along to the wringer, and before he could disentangle his fingers they were caught in the roller and injured. It is contended that Miller was not put to work on the machine, but simply to stand off three feet from it and throw the rags at it. But we think the contention refuted by appellant's own proof. The object to be accomplished through Miller's work was to get the rags through the rollers of the wringer. The objective point of his work was the wringer. Rogers testifies that Miller "worked on the machine two full days from Friday to Monday before the accident happened. On Friday afternoon I was going up, and the boy—Miller—was operating the machine." We think the jury were correct in concluding as a fact sustained by the proofs that Miller was working at the wringer.

On the question of whether such employment was "extra-hazardous" appellant put forward John Staats and another

witness as experts, who testified, in answer to hypothetical questions, that such employment was not "extra-hazardous" for a boy of Miller's age. The testimony of these witnesses was admitted without objection. Nevertheless, we do not regard it as competent. The case did not call for expert testimony. Whether employment at the wringer was "extra-hazardous" for a fourteen-year-old boy was a fact to be found by the jury from the physical conditions of the wringer and the surroundings encountered by the boy in his working with it. This did not involve a question of skill, science or trade calling for expert knowledge. City of Chicago v. McGiven, 78 Ill., 347. Aside from this expert testimony—which the jury may have disregarded as not being in harmony with the evidential facts as to the manner of the operation of the machine in its environment—they were warranted from the facts plainly deducible from the testimony of the other witnesses in finding that the employment at the wringer of a fourteen-year-old boy, unskilled and unacquainted with the manipulation and working of machinery, was extra-hazardous employment, of the character inhibited by the letter and spirit of the statute. With this conclusion we see no reason to disagree.

The cases cited by counsel on the doctrine of assumed risk have, in our judgment, no application. The right to recover here rests for its support in a violation of the statute first quoted. The jury have found—as do we—that the employment of the Miller boy was in violation of its express terms. This being so, the liability follows without any reference to the doctrine of assumed risk and, in fact, in disregard of its sheltering protection as a defense. But for the statute, it is true, the doctrine of assumed risk might be of controlling force, although of this we have much doubt in the light of the proof that Miller was employed to do work not attended with any danger, from which safe employment he was taken and put to work on a dangerous machine, with but little instruction as to the dangers confronting him, and the further fact that as to the particular hazard which he encountered, to his injury, he received no cautionary advice of any

kind. We judge from the evidence that a workman like the witness Rogers, Miller's "boss," must have known that the frayed edges of the rags were liable to catch in the boy's fingers while throwing them, the effect of which would be to suddenly jerk the boy forward and the pulling of his fingers into the rollers of the wringer, thereby exposing him to severe injury.

This certainly is not a case of assumed risk in any of its aspects, for the dangers encountered were neither incident to Miller's employment, nor could they be known or understood by him in the exercise of due care. What is due care in so young a boy, must be determined within the limitation of his actual knowledge of the dangers of the position in which he is placed and of the existence of which he had not been informed. As said in Pressed Brick Co. v. Reininger, 140 Ill., 343, citing Wood on Master and Servant: "The master must warn such young servants against the dangers to which their employment exposes them, and he must put this warning in such plain language as to be sure that they understand it and appreciate the danger." Surely when Rogers saw Miller trying to push a rag into the rollers with his hand, he might have regarded such a rash act as cogent evidence that this immature boy, unaccustomed as he was to work among machinery, had no appreciation of its dangers. It is clear that Miller's injuries resulted from a violation by appellant of the statute *supra*.

There being no error in this record adversely affecting the rights of appellant, the judgment of the Circuit Court is affirmed.

*Affirmed.*